[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Toran,* Slip Opinion No. 2023-Ohio-3564.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2023-Ohio-3564**

THE STATE OF OHIO, APPELLANT, *v.* TORAN, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Toran,* Slip Opinion No. 2023-Ohio-3564.]**

*Criminal law—Fourth Amendment to United States Constitution—Warrantless searches—Inventory searches—Government's failure to submit copy of written inventory-search procedure into evidence in support of warrantless inventory search does not render search per se unreasonable—Law-enforcement officer's testimony attributing inventory-search policy to law-enforcement agency that conducted inventory search, explaining when policy must be followed, and explaining whether policy was followed, combined with body-camera footage documenting search, is sufficient evidence to establish existence of such procedure, that officer who conducted search acted in accordance with policy, and that search was reasonable, and therefore lawful, under Fourth Amendment—Court of appeals' judgment reversed and convictions reinstated.*

(No. 2022-1203—Submitted June 28, 2023—Decided October 4, 2023.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-210431, 2022-Ohio-2796.

---

**KENNEDY, C.J.**

{¶ 1} In this discretionary appeal from a judgment of the First District Court of Appeals, we consider whether a deputy sheriff's testimony and body-camera footage was sufficient evidence to support a finding that a warrantless inventory search of a vehicle was reasonable, and therefore lawful, under the Fourth Amendment to the United States Constitution.

{¶ 2} The Fourth Amendment protects citizens from unreasonable searches and seizures. Typically, the government must obtain a warrant before performing a search, but there are exceptions to this rule. *Katz v. United States*, 389 U.S. 347, 357-358, 88 S.Ct. 507, 19 L.E.2d 576 (1967). One exception is when law enforcement performs an inventory search of an automobile. *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). For that exception to apply, the law-enforcement agency must have adopted before the search a standardized procedure for inventory searches. *See South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Such procedures are put into place to carry out certain community-caretaking functions, such as protecting citizens' property, protecting law enforcement against claims for damage to property, and ensuring officer safety. *Id.* at 368-369; *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). When law-enforcement officers comply with these procedures in good faith, a warrantless inventory search is reasonable and lawful under the Fourth Amendment. *Bertine* at 374; *see Opperman* at 376.

{¶ 3} Appellee, Jamie Toran, was driving under a suspended driver's license when Hamilton County Sheriff's Deputy Kevin Singleton pulled him over. Deputy Singleton subsequently impounded the truck that Toran was driving and performed an inventory search that revealed a handgun in the truck's right door panel. Toran moved to suppress the evidence of the gun on Fourth Amendment

grounds. At the suppression hearing, the state did not submit into evidence a written copy of the sheriff's office's inventory-search procedures. Instead, Deputy Singleton testified about the policy, although not at length. The trial court denied Toran's motion to suppress, and Toran later pled no contest to felony charges stemming from the search. The trial court found him guilty of the offenses and sentenced him to five years of community control. The First District reversed Toran's convictions and the trial court's decision on Toran's suppression motion, 2022-Ohio-2796, ¶ 31, and the state appealed to this court.

{¶ 4} We hold that the government's failure to submit a copy of written inventory-search procedures into evidence in support of a warrantless inventory search does not render the search per se unreasonable. We further hold that a law-enforcement officer's testimony that attributes an inventory-search policy to the law-enforcement agency that conducted the inventory search, explains when the policy must be followed, and explains whether the policy was followed, combined with body-camera footage documenting the inventory search, is sufficient evidence to establish the existence of such procedures, that the officer who conducted the search acted in accordance with the policy, and that the search was reasonable, and therefore lawful, under the Fourth Amendment.

{¶ 5} We therefore reverse the judgment of the First District and reinstate Toran's convictions.

### I. Facts and Procedural History

{¶ 6} In 2019, Deputy Singleton was on patrol when he stopped a truck for improperly displaying a temporary license plate in violation of R.C. 4503.21. Toran was the driver of the truck. After obtaining Toran's personal information, Deputy Singleton learned that Toran's license had been suspended since 2016. Driving under a suspended driver's license is a violation of R.C. 4510.111(A).

{¶ 7} Although the truck was legally parked following the stop, Deputy Singleton determined that it would need to be towed and impounded under the

sheriff's office's policy because Toran had a suspended driver's license. Deputy Singleton then conducted an inventory search of the truck. Deputy Singleton's body-camera footage captured him stating at the beginning of the search that he was going to have the vehicle towed and would conduct an inventory search of the vehicle. During the search, Deputy Singleton discovered a loaded handgun in the truck's right door panel.

{¶ 8} Upon discovering the gun, Deputy Singleton halted the search and placed Toran under arrest, securing him in the back seat of the deputy's cruiser. Deputy Singleton then secured the gun by removing the ammunition from it, placing the gun into a folder and the ammunition into a clear bag, and then consolidating the folder and the clear bag into a bag marked "Evidence/Property." He then resumed the search, finding Toran's prescription medication. He secured the medication by placing it into a folder in the trunk of his cruiser. And after finishing the search, he also placed the evidence bag containing the gun and the ammunition into the trunk of his cruiser.

{¶ 9} Toran was later indicted on one count each of fourth-degree-felony carrying concealed weapons, fourth-degree-felony improperly handling firearms in a motor vehicle, and third-degree-felony having weapons while under disability.

{¶ 10} Toran moved to suppress the evidence of the gun on the grounds that Deputy Singleton's search of the truck violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. At the suppression hearing, Deputy Singleton testified about the stop and the search. He explained what happened after he determined the truck was going to be impounded:

> Due to the stop and [Toran's] status, what our policy is, an inventory search of that vehicle was conducted, any damage, anything. I have been doing this occupation, road patrol, just short

4

of 20 years. I am systematic about how we do the tows because, if there is damage all over the car, valuables can be in the car, and officers need to be accountable.

**{¶ 11}** During the hearing, Deputy Singleton's body-camera footage was admitted into evidence without objection. The trial court viewed the footage, up to the point of Toran's arrest, in chambers. At the conclusion of the hearing, the court determined that the "[s]heriff's department, by policy, indicated the deputy's duty was to conduct an inventory search, which was done." The court denied Toran's motion to suppress, and Toran later pled no contest to all the counts in the indictment. The trial court found him guilty of the offenses and sentenced him to five years of community control.

**{¶ 12}** Toran appealed his convictions to the First District. He argued that the trial court erred in denying his motion to suppress because, in his view, the traffic stop was unlawful and, relevant here, the warrantless search of the truck was not a proper inventory search under the Fourth Amendment and Article I, Section 14, 2022-Ohio-2796 at ¶ 13, 22, although he did not set forth a separate argument under the Ohio Constitution. Toran did not challenge Deputy Singleton's decision to impound the truck. The court of appeals held that the traffic stop was lawful, *id.* at ¶ 21, but that the search "was not reasonable under the Fourth Amendment," because the state's evidence was "insufficient to demonstrate that the inventory search of the vehicle was made in accordance with standardized procedures of the sheriff's department," *id.* at ¶ 30. The court reversed Toran's convictions and the trial court's judgment denying his motion to suppress. *Id.* at ¶ 31.

**{¶ 13}** The state appealed, and we accepted jurisdiction to consider a single proposition of law:

> Where the stop and impoundment of a vehicle is lawful, the subsequent inventory search of the vehicle in accordance with Sheriff Department procedures is not rendered constitutionally unreasonable by the State's failure to introduce actual written policy into evidence or the deputy's failure to testify as to specific details of the policy at the suppression hearing.

*See* 168 Ohio St.3d 1471, 2022-Ohio-4380, 199 N.E.3d 546.

## II. Standard of Review

**{¶ 14}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). But the appellate court must decide the legal questions independently, without deference to the trial court's decision. *Burnside* at ¶ 8.

## III. Law and Analysis

### A. *The Fourth Amendment and Inventory Searches*

**{¶ 15}** The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**{¶ 16}** Reasonableness, therefore, is paramount in determining whether a search was lawful under the Fourth Amendment. And "except in certain carefully

defined classes of cases, a search of private property without consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528-529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

{¶ 17} One exception to the warrant requirement is the reasonable inventory search of a vehicle. *See Opperman*, 428 U.S. at 373, 96 S.Ct. 3092, 49 L.Ed.2d 1000. The reasoning behind this exception comes from the "community caretaking functions" that law-enforcement officers often engage in when dealing with vehicles. *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Inventory searches function "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372, 107 S.Ct. 738, 93 L.Ed.2d 739. Deference is afforded to such "police caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Id.* But such deference does not give law-enforcement officers free reign; rather, inventory searches must be conducted in good faith and not for the sole purpose of investigation. *See id.* at 372, 374.

{¶ 18} The Fourth Amendment is enforceable against the states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 660, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Based on the federal caselaw discussed above, we have determined that warrantless inventory searches are lawful if they are conducted "in good faith and in accordance with reasonable standardized procedure(s) or established routine," *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph one of the syllabus. Regarding the process of evaluating a law-enforcement officer's good faith, the United States Supreme Court has said:

"[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." [*United States v.*] *Leon*, 468 U.S. [897,] 922, n. 23, 104 S.Ct. 3405[, 82 L.Ed.2d 677 (1984)]. These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, *Ornelas v. United States*, 517 U.S. 690, 699-700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), but not his subjective intent, *Wren v. United States*, 517 U.S. 806, 812-813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

*Herring v. United States*, 555 U.S. 135, 145-146, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

### B. Deputy Singleton's Inventory Search Was Conducted in Accordance with Reasonable Standardized Procedure

{¶ 19} To decide whether Deputy Singleton's inventory search of the truck was conducted "in accordance with reasonable standardized procedure[] or established routine," *Hathman* at paragraph one of the syllabus, we must first determine whether the evidence was sufficient to establish that a standardized procedure or routine existed regarding the inventory search.

{¶ 20} As an initial matter, we conclude that the state was not required to submit the inventory-search policy in writing as evidence to establish the existence of such a policy. Numerous state and federal courts across the country have agreed with this conclusion. *See, e.g.*, *People v. Walker*, 20 N.Y.3d 122, 127, 980 N.E.2d 937 (2012); *People v. Gipson*, 203 Ill.2d 298, 306, 786 N.E.2d 540 (2003); *State v. Huisman*, 544 N.W.2d 433, 437 (Iowa 1996); *United States v. Tackett*, 486 F.3d

230, 233 (6th Cir.2007); *United States v. Agofsky*, 20 F.3d 866, 872-873 (8th Cir.1994); *United States v. Frank*, 864 F.2d 992, 1002 (3d Cir.1988). When other evidence such as officer testimony is available, the reasonableness of an inventory search does not hinge on whether a written policy was submitted as evidence. We therefore hold that the government's failure to submit a written inventory-search policy as evidence does not per se mean that the challenged inventory search was unreasonable. However, prosecutors should be mindful that submitting a written policy as evidence would certainly assist judges in determining the reasonableness of an inventory search.

{¶ 21} The issue then becomes whether Deputy Singleton's testimony and body-camera footage was sufficient to establish the existence of an inventory-search policy at the sheriff's office. When discussing the search at the suppression hearing, Deputy Singleton stated:

> Due to the stop and [Toran's] status, what our policy is, an inventory search of that vehicle was conducted, any damage, anything. I have been doing this occupation, road patrol, just short of 20 years. I am systematic about how we do the tows because, if there is damage all over the car, valuables can be in the car, and officers need to be accountable.

{¶ 22} This testimony was sufficient to establish the existence of an inventory-search policy at the sheriff's office. Contrary to Toran's assertion, the issue before this court is not whether Deputy Singleton's decision to impound the truck was reasonable. Indeed, that issue is not what the proposition of law before this court is predicated on, and regardless, it "was not raised in any way in the [c]ourt of [a]ppeals and was not considered or decided by that court," *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph two of the syllabus. The

issue here is whether Deputy Singleton established that the Hamilton County Sheriff's Office has an inventory-search policy, explained when that policy must be followed, and showed whether it was followed in this case.

{¶ 23} Deputy Singleton explained the reasons for the policy—to require surveying for damage to property and keeping track of valuables found in the vehicle. These are some of the community-caretaking functions that inventory-search policies are designed to facilitate. *See Bertine*, 479 U.S. at 372, 107 S.Ct. 738, 93 L.Ed.2d 739. Deputy Singleton's safekeeping of Toran's medication found in the search is a prime example of these functions. And the fact that a handgun was discovered during the search further supports the notion that inventory searches guard law enforcement from danger. *See id.*

{¶ 24} Further, Deputy Singleton provided testimony regarding the circumstances in which inventory searches are appropriate in Hamilton County—namely, when it is discovered during a vehicle stop that the driver has a suspended license, which requires the vehicle to be towed and impounded. Because Toran had been driving under a suspended license, Deputy Singleton ordered the truck to be towed and impounded and performed an inventory search. In doing so, Deputy Singleton acted in accordance with the policy of the sheriff's office.

{¶ 25} Therefore, Deputy Singleton's testimony was sufficient to establish both the existence of the Hamilton County Sheriff's Office's inventory-search policy and that he acted in accordance with the policy.

*C. Deputy Singleton's Inventory Search Was Conducted in Good Faith*

{¶ 26} We are also convinced that Deputy Singleton acted in good faith in conducting the inventory search and that the search was not conducted for the sole purpose of investigation. *See Bertine*, 479 U.S. at 372, 374, 107 S.Ct. 738, 93 L.Ed.2d 739. As discussed above, the sheriff's office had a policy to perform inventory searches under the circumstances presented. Deputy Singleton's discovering that Toran was driving under a suspended license justified his decision

to have the truck towed. Following that decision, and pursuant to the sheriff's office's policy, Deputy Singleton performed an inventory search. Even after he found the gun and arrested Toran, he continued the search, which allowed him to find and inventory Toran's medication before the truck was impounded, showing adherence to the policy's purpose. In addition, his testimony indicated that he had nearly 20 years of experience and was systematic about the impoundment process. His knowledge, experience, and actual use of a systematic process showed that he was well trained in the area of vehicle searches and that the inventory search was not conducted for the sole purpose of investigation. Therefore, he acted in good faith.

{¶ 27} Deputy Singleton's testimony established the existence of an inventory-search policy at the sheriff's office. Both the testimony and body-camera footage proved that he acted in accordance with that policy and in good faith. For those reasons, we hold that his warrantless inventory search of the truck was reasonable, and therefore lawful, under the Fourth Amendment.

### IV. Conclusion

{¶ 28} "The Framers of the Fourth Amendment have given us only the general standard of 'unreasonableness' as a guide in determining whether searches and seizures meet the standard of that Amendment in those cases where a warrant is not required." *Cady*, 413 U.S. at 448, 93 S.Ct. 2523, 37 L.Ed.2d 706. Since *Cady* was decided, courts have striven to ascertain under what circumstances a warrantless inventory search is reasonable. Caselaw paves our path in such determinations, requiring us to ask whether the law-enforcement agency had standardized inventory-search procedures, whether the inventory search was conducted in accordance with these standardized procedures, and whether, if the officer complied with the procedures, he did so in good faith. *See Hathman*, 65 Ohio St.3d at 407-408, 604 N.E.2d 743.

{¶ 29} While prosecutors facing inventory-search challenges might be wise to introduce written inventory-search policies into evidence and to routinely ask complete questions regarding the procedures, a written policy is not a constitutional requirement to establish the reasonableness of an inventory search. Testimony that establishes the existence of an inventory-search policy, explains when the policy is to be followed, and explains whether the policy was followed, combined with body-camera footage documenting the inventory search, may be sufficient evidence to support a finding that a warrantless inventory search was reasonable, and therefore lawful, under the Fourth Amendment. And here, we conclude that Deputy Singleton's inventory search was lawful.

{¶ 30} Therefore, we reverse the judgment of the First District Court of Appeals and reinstate Toran's convictions.

Judgment reversed

and convictions reinstated.

DEWINE, DONNELLY, and LEWIS, JJ., concur.

GALLAGHER, J., concurs, with an opinion.

STEWART, J., dissents, with an opinion joined by BRUNNER, J.

SEAN C. GALLAGHER, J., of the Eighth District Court of Appeals, sitting for FISCHER, J.

RONALD C. LEWIS, J., of the Second District Court of Appeals, sitting for DETERS, J.

_____

**GALLAGHER, J., concurring.**

{¶ 31} I fully concur in the majority opinion, but I write separately to emphasize that no reviewing court could have addressed the question whether the warrantless inventory search of the vehicle that appellee, Jamie Toran, had been driving was unconstitutional under the Fourth Amendment to the United States Constitution because the impoundment of the vehicle was itself unlawful based on

the state's failure to enter the Hamilton County Sheriff's Office's policy on impoundment into the trial-court record. This question implicates broader procedural concerns. The record contains scant evidence of any departmental impoundment policy, because Toran failed to challenge the policy as a basis to suppress evidence either in his motion to suppress or at the hearing on that motion. Under Crim.R. 12(H) and 47, he waived any such argument pertaining to that policy at the trial-court level. *See United States v. Concepcion-Guliam*, 62 F.4th 26, 31 (1st Cir.2023) (defendant's Fourth Amendment claims were waived and could not be reasserted on appeal); *see also United States v. Pierre*, 486 Fed.Appx. 59, 66 (11th Cir.2012).

**{¶ 32}** The argument portion of Toran's motion to suppress was limited to two paragraphs, the first of which generically cited the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. The second paragraph presented a boilerplate argument that the stop of the vehicle must have been pretextual because, in Toran's view, he had "properly displayed th[e] temporary plate." No legal authority in support of that proposition was ever presented to the trial court. During his opening statement at the suppression hearing, defense counsel reiterated Toran's position: "This is a warrantless search. [The state] has to prove the search was lawful. There was no search warrant to search [Toran's] vehicle. *There is no exception to the search warrant requirement* that would allow the officer to lawfully search the vehicle * * * Toran was driving." (Emphasis added.) The state thereafter focused on proving that the inventory-search exception to the warrant requirement applied, based on Toran's framing of the Fourth Amendment issue. This should have ended any potential for appellate review on the impoundment-policy issue. *See State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 8.

**{¶ 33}** Despite the limited framing of the issues within the motion to suppress, the First District Court of Appeals reviewed the reasonableness of the

inventory search conducted by the deputy sheriff under constitutional standards. The First District never addressed the impoundment-policy issue. That issue was articulated for the first time in Toran's appellate briefing. The lawfulness of the decision to impound the vehicle, however, was not an issue that could have been raised for the first time by Toran in his direct appeal to the First District, much less as a basis to affirm the appellate court's decision.

**{¶ 34}** Toran's belated argument pertaining to the legality of the deputy's decision to impound the vehicle, a decision that then triggered the need for the inventory search, represents a broader trend of parties presenting new arguments during the appellate process by looking first to any federal constitutional question before considering Ohio's procedural rules, thus eroding the traditional rule that an issue should not be decided on constitutional grounds unless doing so is necessary. *See State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9 ("It is well settled that this court will not reach constitutional issues unless absolutely necessary"), citing *In re Miller*, 63 Ohio St.3d 99, 110, 585 N.E.2d 396 (1992), and *Hall China Co. v. Pub. Util. Comm.*, 50 Ohio St.2d 206, 210, 364 N.E.2d 852 (1977); *see also State v. Pugh*, 43 Ohio St. 98, 122, 1 N.E. 439 (1885). Not all challenges implicating a constitutional question need be analyzed or discussed through that lens. The answer to the question regarding the lack of evidence concerning the impoundment policy is simple: Toran failed to raise the issue in the trial court with the specificity and citations to authority required by Crim.R. 12(H) and 47. Under Crim.R. 12(H), Toran waived any challenges to the legality of the deputy's decision to impound the vehicle he had been driving, and he is not permitted to cite any deficiencies in the state's presentation of evidence, which depended on that waiver, for the first time on appeal. *See, e.g.*, *State v. Mock*, 11th Dist. Lake No. 2012-L-066, 2013-Ohio-874, ¶ 9 (because the defendant failed to advance arguments in a suppression motion filed in the trial court, the state lacked notice of the arguments and an opportunity to present its case on the issues

pertaining to the arguments; the issues were waived and the trial court could not make any findings of fact on the waived issues, because there was no evidence introduced on them at the suppression hearing); *State v. Walker*, 2017-Ohio-9255, 103 N.E.3d 325, ¶ 28-29 (1st Dist.) (following *Mock*); *see also State v. Harrison*, 166 Ohio St.3d 479, 2021-Ohio-4465, 187 N.E.3d 510, ¶ 16 (lead opinion) (failure to raise an argument in the trial court precluded the opposition from developing a record that could be reviewed on appeal).

{¶ 35} Accepting Toran's argument here would send the wrong message to litigants and courts in Ohio that courts of review may find error and redefine the scope of black-letter law concerning decisions never made by the trial courts and on evidentiary foundations never timely tested. Permitting parties to partake in this form of gamesmanship would serve no legitimate purpose. *See Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, at ¶ 24. Ohio courts would be faced with the prospect that regardless of the argument actually presented by a defendant at the trial-court level, the state would be required to anticipate and disprove every claim that could have been asserted by the defendant in order to preserve the defendant's conviction as the issues morph throughout the appellate process. And Ohio law does not require this form of preemptive advocacy. *Id.* at ¶ 19, quoting *State v. Peagler*, 76 Ohio St.3d 496, 500, 668 N.E.2d 489 (1996) ("when a defendant makes stipulations or narrows the issues to be decided at a suppression hearing, the prosecution need not 'prove the validity of every aspect of the search' "). Our adversarial system is designed around the premise that the parties " 'are responsible for advancing the facts and arguments entitling them to relief.' " *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), quoting *Castro v. United States*, 540 U.S. 375, 386, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (Scalia, J., concurring in part and concurring in the judgment). This system does not depend on an opposing party's prediction and preemption of potential arguments that might be belatedly raised. The Rules of

Criminal Procedure precluded Toran from challenging the legality of the deputy's decision to impound the vehicle in his direct appeal, and as a result, that cannot be an independent basis to affirm the appellate court's decision.

{¶ 36} Crim.R. 47 unambiguously requires any pretrial motion to "state with particularity the grounds upon which it is made" and the relief sought and to be supported by "a memorandum containing citations of authority" and, if applicable, an affidavit. "By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994) (collecting cases); *State v. F.O.E. Aerie 2295, Port Clinton*, 38 Ohio St.3d 53, 54-55, 526 N.E.2d 66 (1988) (failure to comply with Crim.R. 47 results in waiver of the argument). As a result, "before the state is put to [its] burden [on a suppression issue], the defendant must assert the grounds upon which he intends to challenge the validity of the search." *Wintermeyer* at ¶ 18, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), and *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 10. Toran made no attempt to provide any specificity within his suppression motion. The burden never shifted to the state to introduce a foundation for the invocation of the Hamilton County Sheriff's Office's impoundment policy.

{¶ 37} Arguably, the state abandoned any claim that Toran waived the argument by not advancing a waiver argument in his appeal, s*ee, e.g.*, *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 77, but the state was never provided with the opportunity to advance a waiver argument with respect to the impoundment-policy questions. The trial court agreed with the state's arguments, and Toran did not raise the issue of any lack of evidence pertaining to the impoundment policy until his appeal to the First District. Because the First District implicitly rejected any argument pertaining to the legality of the

impoundment and presumed the validity of the decision to impound the vehicle as the underlying basis to reach the inventory-search question, the state bore no burden to address Toran's waiver of the issue.

{¶ 38} Notwithstanding Toran's waiver, even if the procedural rules are discarded in favor of addressing the merits of his argument, the record is sufficient to demonstrate the existence of an impoundment policy at the sheriff's office and the particular criteria underlying the deputy's decision to impound the vehicle.

{¶ 39} According to the transcript of the suppression hearing, Hamilton County Sheriff's Deputy Kevin Singleton articulated the basis of his decision for having the vehicle towed: he was following procedures under "the policy" applying to a situation in which the sole occupant, who was not under arrest, could not be left with the vehicle following the issuance of a citation because he did not have a valid driver's license. As Deputy Singleton clarified on defense counsel's prompting, before the inventory search was conducted, "there was no arrest." Deputy Singleton then provided the criteria justifying his decision to impound the vehicle, which necessitated the inventory search: "When someone hasn't had a driver's license for three years with multiple suspensions and the record indicated he had been pulled over by another agency, pulled over in the same vehicle, that vehicle is going to be towed due to that status." He then said, "I have a procedure that I follow. *It is in the policy*, and I am going to follow my policy." (Emphasis added.) Toran's counsel conceded the existence of that policy: "I understand you have a policy." And counsel then attempted to explore the outer limits of that policy in the remainder of his cross-examination of the deputy, suggesting that an officer may release a vehicle to another person who is present when the traffic stop ends.

{¶ 40} In other words, when the deputy made the decision to impound the vehicle, Toran was not under arrest. He was free to leave at that point, but because he was not licensed to drive and had been the only occupant of the vehicle, the vehicle was going to be impounded to prevent him from operating it after the

deputies departed the scene. Although that decision and the criteria under which it was made may be challenged based on the totality of the evidence, Toran never questioned the existence of a policy in the trial court, and the evidence was determined by the trial court to be sufficient to justify the decision to implicate the inventory-search policy. The questions surrounding the decision to impound the vehicle turn on Toran's failure to adhere to the Rules of Criminal Procedure. *See* Crim.R. 12(H) and 47. They do not require analysis under the Ohio or federal Constitutions.

{¶ 41} Therein lies the danger of permitting parties to shirk procedural rules in favor of raising new constitutional arguments for the first time on appeal. The scant evidence of the departmental impoundment policy was a direct result of Toran's failure to state with specificity the basis of his motion to suppress. He then failed to timely challenge the legality of the impoundment, and his counsel elicited statements from the deputy justifying the deputy's decision to impound the vehicle based on the criteria under the policy that a vehicle may not be left with the sole occupant of the vehicle when he or she has no valid driver's license.

{¶ 42} Courts of review should not resort to broad discussions of constitutional requirements to resolve cases in which the parties have failed to comply with the procedural rules at the most basic levels. If we were to affirm the judgment of the First District relying on the lack of a record regarding the impoundment policy, this court would be sending a message that defendants no longer need to abide by the Rules of Criminal Procedure governing motions to suppress and that constitutional questions may be resolved in the defendant's favor despite his or her failure to trigger the state's requirement to build a record in the trial court. With this in mind, I concur in the majority opinion and join this court's judgment.

_____

**STEWART, J., dissenting.**

**{¶ 43}** This case involves questions about whether the impoundment and search of a vehicle were legal. The law in this area is straightforward:

(1) The impoundment must be legal in order for the inventory search to be legal,

(2) both the impoundment and the inventory search must follow established policy and procedure, and

(3) the burden of proof is on the state to show that the impoundment and the search were valid.

**{¶ 44}** Here, appellant, the state of Ohio, failed to carry that burden. The state failed to show that (1) the Hamilton County Sheriff's Office had a policy in place for determining when and how to impound and then conduct an inventory search of a vehicle and (2) whether that policy was followed here. The majority opinion glosses over many conflicting facts and ignores others to create an expansive conception of an inventory search that transforms the search from a narrow exception to the warrant requirement under the Fourth Amendment to the United States Constitution into a discretionary investigatory tool with no boundaries or standards for its use. In sum, the majority concludes that an arresting officer's testimony that he followed "our policy" (assuming "our policy" means the policy of his law-enforcement agency)—and that testimony alone—is legally sufficient to establish that the officer's agency had a policy on the impounding and searching of vehicles and that the officer followed that policy. This is not, however, what the law requires.

**{¶ 45}** In reaching its conclusion, the majority not only ignores the burden of proof placed on the state to establish the applicability of an exception to the Fourth Amendment's warrant requirement, but it also bypasses any analysis of the arresting deputy sheriff's decision to impound the vehicle in the first place. Because the majority erodes the protections of the warrant requirement in favor of

an expansive conception of the inventory-search exception that swallows the general rule, I dissent.

{¶ 46} Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *see also State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98. And those "exceptions to the warrant requirement are to be narrowly construed." *New York v. Belton*, 453 U.S. 454, 464, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (Brennan, J., dissenting) (collecting cases). Consequently, the state has the burden of demonstrating that a challenged warrantless search falls within one of the narrow exceptions to the warrant requirement of the Fourth Amendment. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951), citing *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).[1]

{¶ 47} The warrantless search at issue in this case is an inventory search of the truck that appellee, Jamie Toran, was driving when Hamilton County Sheriff's Deputy Kevin Singleton pulled him over. An inventory search is "the search of property *sc and detained*, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (Emphasis added.) *Whren v. United States*, 517 U.S. 806, 811, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), fn. 1. Before a court reaches the issue of the legality of an inventory search, it must determine that the impoundment of the vehicle prompting the inventory search was legal. *See United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir.1991) ("If a search is to be upheld under the

---

1. Article I, Section 14 of the Ohio Constitution contains language that is nearly identical to that of the Fourth Amendment, "and we have interpreted it as affording at least the same protection as the Fourth Amendment." *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13, citing *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11.

inventory search doctrine, * * * the police must first have the authority to impound the vehicle and must then follow the procedures outlined in the policy"); *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 29 ("testimony about the police procedure for conducting the inventory is insufficient to establish the reasonableness of the search under the Fourth Amendment if the impoundment of the vehicle is not itself lawful"). Here, the state asserts that "[b]ecause the impoundment of Toran's vehicle was proper, the search was proper." But the state's assertion that impounding the vehicle was lawful does not make it so.

### *The state did not show that the decision to impound the vehicle was lawful*

{¶ 48} Following the hearing on Toran's motion to suppress the evidence of the handgun found in his truck, the trial court stated from the bench that the impoundment of the vehicle was proper because it could not be released to Toran since he did not have a valid driver's license. Toran challenged the legality of the impoundment in his direct appeal to the First District Court of Appeals. Although the court of appeals did not reach the underlying issue whether the decision to impound the vehicle was lawful, it nonetheless reached the correct conclusion that Deputy Singleton's search of the vehicle was not justified under the inventory-search exception because the state did not meet its burden of demonstrating that the search was in accordance with standardized procedures of the sheriff's department. *See* 2022-Ohio-2796, ¶ 30-31.

{¶ 49} The majority avoids analyzing the deputy's decision to impound the vehicle. It states as its grounds for doing so that Toran forfeited the issue by not raising it in the court of appeals and that it "is not what the proposition of law before this court is predicated on." Majority opinion, ¶ 22. The concurrence also decries the analysis regarding the impoundment on the ground that Toran waived the issue. The majority and the concurrence are wrong on those points. Toran did raise this issue in both the trial court and the court of appeals. Although he combined his

arguments challenging Deputy Singleton's decision to impound the vehicle and the propriety of the concomitant inventory search, he argued that Deputy Singleton was not justified in impounding the vehicle. And while the proposition of law we accepted for review is written on the flawed assumption that Deputy Singleton's decision to impound the vehicle was lawful, the state argues in its brief that the impoundment was lawful under R.C. 4513.61.[2] Despite the concurrence's apparent frustration with what one might deem ineffective assistance of counsel, there is no evidence of gamesmanship in the record before us, as the concurring opinion suggests. In each of the courts below, Toran raised issues concerning the vehicle stop, the impoundment, and the search. His theory of the Fourth Amendment violation has not changed: the stop was pretextual, and the impoundment and therefore any ensuing search were unlawful. Toran also correctly notes that in order to determine that an inventory search was permissible, the impoundment of the vehicle must have been lawful. The state bears the burden to demonstrate that its challenged conduct falls within the inventory-search exception to the Fourth Amendment's warrant requirement. And it is the act of impounding the vehicle that gives rise to the need for, and the justification of, an inventory search. Thus, the threshold inquiry when determining the lawfulness of an inventory search is whether the impoundment of the vehicle was proper. *See Leak* at ¶ 29; *see also United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir.2020) ("A vehicle is lawfully seized and, thus, subject to an inventory search if it is lawfully impounded"); *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir.1996) ("Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment"). If the evidence of such an impoundment policy is "scant," concurring opinion, ¶ 31, as the concurring opinion suggests, then the blame for any deficiency in the record lies with the state.

---

2. As discussed below, the state's reliance on this statute is misplaced.

{¶ 50} It is well established that in the interests of public safety and as part of their community-caretaking functions, law-enforcement officers have the authority to seize vehicles and remove them from the streets. *South Dakota v. Opperman*, 428 U.S. 364, 368-369, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976). Officers may impound a vehicle if the decision to do so is based on standardized criteria and is not solely a basis to search for evidence of other criminal activity. *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Duguay* at 351, quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (" '[S]tandardized criteria or established routine must regulate' inventory searches. * * * Among those criteria which must be standardized are the circumstances in which a car may be impounded' " [brackets added in *Duguay*]); *United States v. Young*, 751 Fed.Appx. 381, 388, (4th Cir.2018), fn. 3 ("a police officer's initial decision to tow and impound a vehicle—the necessary predicate for an inventory search—also must be governed by standardized criteria").

{¶ 51} Courts have recognized that the decision to impound a vehicle is valid when the decision is in line with a departmental policy or a statute and is based on the totality of the circumstances rather than being based solely on the officer's discretion. *Compare State v. Calvin*, 3d Dist. Hancock No. 5-15-17, 2015-Ohio-4801, ¶ 23 (decision to impound was lawful when it was pursuant to a written policy and took into account that the vehicle was located on a busy highway at approximately 1:20 a.m. and it was unclear whether or when another driver could retrieve the vehicle) *with State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 23 (decision to impound was unlawful when the officer failed to produce or articulate any impoundment policy and testified only that impoundment decision was solely in an officer's discretion). In *Myrick*, the defendant was arrested for trespassing at a nightclub, and at the time of the arrest, his car was legally parked in the common parking lot where the nightclub and other businesses were located. *Id.* at ¶ 2-3, 26. Upon being placed in the arresting officer's police

cruiser, Myrick asked an acquaintance who was nearby to call Myrick's wife and to drive his car home. *Id.* at ¶ 3. The officer refused to allow Myrick's acquaintance to take possession of the car and impounded and searched the car, finding a handgun. *Id.* at ¶ 3-4.

{¶ 52} Similarly, in this case, the state failed to produce any evidence of a departmental impoundment policy—written or otherwise—and Deputy Singleton failed to articulate the criteria for impoundment under any such policy. Instead, the deputy spoke of a general, sweeping policy: "There is not going to be a time in my entire career [that] you are going to find that I let a vehicle go. That's not the policy of the Department and not my policy as an officer." Assuming arguendo that such a departmental policy actually exists, it is overbroad. Deputy Singleton's testimony in no way indicates what criteria or factors he or other law-enforcement officers in his department are supposed to consider when deciding whether to impound a vehicle, such as the location and safety of the vehicle, whether another driver is available to drive the vehicle, or other factual circumstances. In fact, the deputy testified that he would not release the vehicle "regardless of who showed up to get [it], including the registered owner. That was not going to change [his] conduct and [his] procedure." This purported policy leaves the decision whether to impound a vehicle completely within the discretion of an individual officer and does not take into account the unique factual circumstances of each vehicle stop, let alone what the law actually requires. This runs afoul of the Fourth Amendment.

{¶ 53} The facts in the record before us cannot sustain any conclusion other than that the impoundment of the vehicle was unlawful. The vehicle was legally parked on a residential street, in line with other vehicles, so there was no concern that the vehicle was impeding traffic or was located on a busy highway. Toran's driving with a suspended license was not an arrestable offense. Upon being stopped, Toran immediately informed Deputy Singleton that Toran's mother was the owner of the vehicle and lived nearby. Toran even attempted to call his mother

to have her retrieve the vehicle, but Deputy Singleton said she did not need to come, because he was only issuing a ticket. However, since Toran had already informed Deputy Singleton that he did not have a license, the deputy knew Toran was not authorized to drive the vehicle, and there are no facts demonstrating why Toran's mother could not retrieve the vehicle. Toran's mother appeared at the scene anyway, arriving shortly after the vehicle had been searched and Toran arrested for having the gun but before Deputy Singleton had called for a tow truck or started the process of physically removing the vehicle. She offered Deputy Singleton evidence of her valid registration and proof of insurance, which he declined to review. In short, there was no lawful basis for Deputy Singleton to impound the vehicle, and therefore there was no lawful reason for him to search the vehicle.

{¶ 54} The record shows that Deputy Singleton also made conflicting statements about when and why he impounded the vehicle. He testified that he made the decision to impound the vehicle based on Toran's "driving status" and that he would never have released the vehicle to its owner. But his body-camera footage shows that he informed Toran's mother that the car was being impounded because it was connected to a felony arrest. He made a similar statement to Toran, telling him that the vehicle was being towed because of Toran's "driving status." But Deputy Singleton also told Toran that if he were not making an arrest, he could release the vehicle to the vehicle's owner "but not when [he] t[ook] a gun out of it."

{¶ 55} The problem with this sequence of events is that in order for the search to have been lawful, the deputy had to have made the decision to impound the vehicle, as authorized by statute or departmental policy, *before* he searched it and found the gun that gave rise to the felony charge. He was not permitted under the Fourth Amendment to unlawfully search the vehicle and then use any evidence he found during the search as a basis to impound the vehicle. The majority opines that the impoundment and the search were legal based on the combination of the deputy's testimony and his body-camera footage. But the exchange detailed above

conflicts with Deputy Singleton's testimony that he impounded the vehicle based on Toran's suspended license and completely undermines the deputy's decision to impound, let alone search, the vehicle.

{¶ 56} In an attempt to bolster Deputy Singleton's decision to impound the vehicle, the state contends that R.C. 4513.61 applies to this case. This argument is a nonstarter.

{¶ 57} R.C. 4513.61(A)(1) through (2) states:

The sheriff of a county * * * may order into storage any motor vehicle, including an abandoned junk motor vehicle as defined in [R.C. 4513.63], that * * * [h]as come into the possession of the sheriff * * * as a result of the performance of the sheriff's * * * duties * * * or * * * [h]as been left on a public street or other property open to the public for purposes of vehicular travel, or upon or within the right-of-way of any road or highway, for forty-eight hours or longer without notification to the sheriff * * * of the reasons for leaving the motor vehicle in such place. However, when such a motor vehicle constitutes an obstruction to traffic it may be ordered into storage immediately * * *.

{¶ 58} Under any view of the facts here, this statute does not apply. The vehicle Toran had been driving was not in Deputy Singleton's possession as a result of the performance of his duties—as discussed above, Toran's mother owned the vehicle, could legally operate it, and was at the scene before it was impounded and the deputy provided conflicting reasons as to why it was being impounded. *See Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, at ¶ 26 (finding no reason to impound a vehicle when the driver had been present and was duly licensed and able to drive the vehicle and there was no reason to believe the vehicle would

be left unattended). And it is undisputed that the vehicle was not left on the street for 48 hours or longer. Further, the record shows—and the state does not dispute—that the vehicle was not obstructing traffic; it was parked on the side of the road like other vehicles. Deputy Singleton offered no statute, ordinance, or policy of the sheriff's department evincing a community-caretaking rationale for impounding and subsequently searching the vehicle. *Compare Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 12-16 (upholding the impoundment of a vehicle when the defendant could not have lawfully driven the vehicle away, the vehicle could not safely have been allowed to remain on Interstate 71, and the impounding officer had authority to have the vehicle towed pursuant to the Revised Code and a city ordinance).

{¶ 59} Additionally, there was no basis for the impoundment of the vehicle in the local law. Toran was stopped (at approximately 800 Adams Street in Hamilton County) in the Village of Lincoln Heights. *See State v. Marshall*, 2022-Ohio-3795, 199 N.E.3d 665, ¶ 16 (noting that a court may take judicial notice of geographic facts not subject to reasonable dispute). Lincoln Heights has passed ordinances authorizing police to remove vehicles that are illegally parked or are obstructing traffic, and Lincoln Heights allows for a *court* to order the immobilization and impoundment of a vehicle involved in a driving-under-a-suspended-license offense. *See* Lincoln Heights Code of Ordinances 71.18(A), 76.03, and 76.09(B). Lincoln Heights does not, however, have an ordinance specifically permitting *police* impoundment of a vehicle based on the driver's status of having a suspended license. Therefore, there is no local ordinance or state statute that authorized the impoundment here.

{¶ 60} Because the state has not shown that the impoundment of the vehicle was lawful in this case, it cannot show that the deputy's search of the vehicle fell within the inventory-search exception to the Fourth Amendment's warrant requirement. *See Leak* at ¶ 29. Therefore, the deputy's search of the vehicle

violated the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

***The state did not show that the search was conducted in accordance with a valid inventory-search policy***

{¶ 61} Even if Deputy Singleton's decision to impound the vehicle was valid, an analysis similar to that for the impoundment applies to the inventory search—namely, was the inventory search conducted pursuant to a valid policy (or statute), and was that policy actually followed? *See State v. Mesa*, 87 Ohio St.3d 105, 110-111, 717 N.E.2d 329 (1999) (police officers followed a detailed written policy that specified where officers could and could not search and when an inventory report was required). Similarly, the state has the burden of demonstrating the lawfulness of the inventory search. *See State v. Hathman*, 65 Ohio St.3d 403, 408, 604 N.E.2d 743 (1992) (concluding that the opening of a closed container during an inventory search was unlawful, because the state did not meet its burden of establishing the existence of a standardized policy or practice governing the opening of such containers).

{¶ 62} When discussing the impoundment and the inventory search at the suppression hearing, Deputy Singleton stated:

> Due to the stop and the status [of Toran's suspended license], what our policy is, an inventory search of that vehicle was conducted, any damage, anything. I have been doing this occupation, road patrol, just short of 20 years. I am systematic about how we do the tows because, if there is damage all over the car, valuables can be in the car, and officers need to be accountable.

{¶ 63} The majority concludes that Deputy Singleton's testimony "was sufficient to establish both the existence of the Hamilton County Sheriff's Office's

inventory-search policy and that he acted in accordance with the policy." Majority opinion at ¶ 25. But the deputy's testimony tells us nothing about the substance of any policy of the Hamilton County Sheriff's Office, nor does it demonstrate that he followed any such policy.[3] Deputy Singleton testified that he followed *a* policy in deciding to impound and search the vehicle. But his testimony does not demonstrate whose policy he followed, the details or criteria of that policy, and how his actions complied with the policy. Officer testimony must outline the law-enforcement agency's standardized inventory-search policy and specifically describe how the decision to search adhered to the policy. *See State v. Smith*, 1st Dist. Hamilton No. C-200352, 2021-Ohio-2654, ¶ 35-40 (upholding trial court's determination that an inventory search was unlawful when officer failed to testify to the details of the policy, such as whether closed containers found in the vehicle could be opened and searched); *State v. Beasley*, 1st Dist. Hamilton No. C-180152, 2019-Ohio-3936, ¶ 14 (finding that an inventory search was unlawful when an officer testified about a general policy that the contents of vehicles searched must be cataloged to ensure the contents are protected and returned).

{¶ 64} Similarly, the body-camera footage does not prove the existence of any inventory-search policy at the Hamilton County Sheriff's Office, nor does it show that Deputy Singleton followed such a policy. For example, there is no footage of Deputy Singleton completing an inventory-search form, physically producing a handbook or written policy for his review, or discussing any such policy with his partner at the scene. The majority's reliance on the body-camera

---

3. Inventory-search policies typically contain a provision requiring the officer conducting the search to list or catalog the items in the vehicle and any damage to the vehicle—for the very reasons Deputy Singleton stated in his testimony. *See* Mesa at 112, fn. 4 (policy required that every item removed from a vehicle be listed on a report); State v. Beasley, 1st Dist. Hamilton No. C-180152, 2019-Ohio-3936, ¶ 14 (noting that officer conducting the search did not appear to adhere to generic inventory policy and failed to write down items removed from the vehicle). The record in this case contains no evidence of any inventory catalog or list regarding the search of the vehicle.

footage makes little sense here, because the footage does not answer any Fourth Amendment questions in this case.

{¶ 65} Without having offered more, the state has failed to carry its burden to prove that the inventory search in this case was lawful, and I would affirm the judgment of the First District based on the facts presented. To be clear, I agree with the majority that the state is not always required to produce a written policy to justify the impoundment of a vehicle and a concomitant inventory search (though, obviously, producing such a policy could alleviate the need for a court to consider this precise issue and would provide clarity to law-enforcement officers). But the Fourth Amendment requires more than general, personalized and unsupported officer testimony that a departmental or agency policy exists and the officer followed it. *See Hathman*, 65 Ohio St.3d at 404-405, 604 N.E.2d 743 (finding officer's general testimony about departmental policy on how to properly conduct an inventory search insufficient to support search of closed containers found in vehicle); *Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, at ¶ 37. This is not an onerous burden for the state to carry. So while there may be evidence showing that the decision to impound the vehicle in this case was made pursuant to departmental policy, if that evidence exists, it is not in the record. Without knowing the requirements of the policy the deputy referred to in his testimony, just like the court of appeals, this court is unable to determine whether he acted pursuant to the policy.

{¶ 66} The majority skips past the rigorous standards of the Fourth Amendment to determine that the ends here justify the means. The majority states that one purpose of the inventory-search exception is to safeguard officers from danger and that the fact that a gun was found (and thus secured) during the search means the search was appropriate. The majority is right that one purpose of inventory searches is to safeguard officers, but the majority also knows better than to declare that finding the weapon makes the search lawful. That analysis puts the

cart before the horse and glosses over the serious deficiencies related to the search in this case, all to the detriment of the safeguards that the Fourth Amendment enshrines. It is the Fourth Amendment that "gives concrete expression to a right of the people which 'is basic to a free society.' " *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), quoting *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Because the majority concludes that the inventory search here was lawful, I dissent, and I would affirm the decision of the First District Court of Appeals.

BRUNNER, J., concurs in the foregoing opinion.

_____

Melissa A. Powers, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellant.

Brian A. Smith Law Firm, L.L.C., and Brian A. Smith, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Christine Y. Jones, Director, Appellate Division; Cullen Sweeney, Cuyahoga County Public Defender, and Jonathan Sidney and Michael V. Wilhelm, Assistant Public Defenders; and Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, urging affirmance or dismissal for amici curiae Hamilton County Public Defender, Cuyahoga County Public Defender, and Office of the Ohio Public Defender.

_____