[Cite as *State v. Curry*, 2025-Ohio-2083.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :         APPEAL NO.  C-240404
                                                  TRIAL NO.   B-2303584-B
    Plaintiff-Appellee,             :

  vs.                                   :
                                                  *JUDGMENT ENTRY*
SHAWN CURRY,                            :

    Defendant-Appellant.            :


This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is reversed and the cause is remanded for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 6/13/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *State v. Curry*, 2025-Ohio-2083.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240404 |
| | | TRIAL NO. B-2303584-B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| SHAWN CURRY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 13, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} After the trial court denied his motion to suppress, defendant-appellant Shawn Curry pled no contest to aggravated possession of drugs, aggravated trafficking in drugs, possession of cocaine, trafficking in cocaine, tampering with evidence, carrying a concealed weapon, and having a weapon while under disability. He was sentenced to an aggregate period of 60 months' imprisonment. Curry now appeals, arguing in two assignments of error that the trial court erred in denying his motion to suppress and that the trial court erred in the imposition of sentence.

{¶2} Following our review of the record, we hold that the trial court erred in denying Curry's motion to suppress because the protective sweeps conducted after Curry's arrest, during which the contraband that was the subject of the search warrant was discovered, were unconstitutional. We accordingly reverse the trial court's judgment and remand this cause for further proceedings.

## I. Factual and Procedural History

{¶3} On July 25, 2023, multiple Cincinnati Police officers were dispatched to 5489 Gardenview Lane in the Winton Terrace neighborhood of Cincinnati after receiving reports that an individual, later determined to be Curry, was firing gunshots in the street. Upon arriving at the scene, officers witnessed Curry toss a firearm onto the ground and enter through a window into the residence located at 5489 Gardenview Lane.

{¶4} The following events were recorded on the body-worn cameras ("BWCs") of several of the officers involved. Officers surrounded the residence. They knocked on the door of the apartment that Curry had entered, announced their presence, and ordered him to come outside. A woman could be heard yelling inside the apartment. When Curry did not respond or open the door, officers used a battering

3

ram to breach the doorway of the apartment. The doorway led to a long hallway with a room off to the right at the end of the hallway. The officers could not see any people, but they could hear a woman crying and screaming and a dog loudly barking. The occupants of the apartment were ordered to exit, but when they did not comply, officers made their way down the hallway, through what turned out to be a kitchen on the right. They discovered Curry and Jamelia Brooks standing in the living room, which was accessed by walking through the kitchen and turning left.[1] Brooks eventually walked over to the officers and was handcuffed, while Curry dropped to the floor in compliance. Curry was also handcuffed, and he and Brooks were taken outside.

{¶5}   The suppression-hearing testimony revealed that the officers turned off their BWCs and conducted what they called a "protective sweep" of the entire apartment, except for a bedroom behind a closed door. Officers did not enter the bedroom because they could hear a dog barking from inside the room and were worried that the dog would be aggressive.

{¶6}   During the protective sweep, the officers saw what they believed to be a digital scale, a bag containing a white powdered substance believed to be fentanyl, and a bag containing blue pills. All three items were on the kitchen counter. After a neighbor assured the officers that the dog in the bedroom was not aggressive and offered to watch it, the officers entered the bedroom to retrieve the dog and conduct a protective sweep of that room. A firearm was found in plain view on the bed. Based on the evidence observed during the protective sweeps, the officers obtained a warrant to search the apartment. When the warrant was executed, additional contraband was recovered.

---

[1] Jamelia Brooks is alternatively referred to as Jamelia Bright in the record.

**{¶7}** Curry was indicted for aggravated possession of drugs, aggravated trafficking in drugs, possession of cocaine, trafficking in cocaine, tampering with evidence, carrying a concealed weapon, and having a weapon while under disability.

**{¶8}** Curry filed a "motion for Franks Hearing and to suppress evidence." In the motion, Curry asked the court to suppress any evidence obtained from the search of his apartment "on the grounds that said evidence is the fruit of an unconstitutional search and seizure in violation of" Curry's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14 of the Ohio Constitution.

**{¶9}** The memorandum in support of Curry's motion argued that the officers had included false statements in the search warrant affidavit. He contended that any statements asserting that the officers observed contraband in plain view during the protective sweep were false and were contradicted by footage from the officers' BWCs. Curry further argued that, absent these false statements, the search warrant affidavit lacked probable cause to support the issuance of the warrant.

**{¶10}** Curry's memorandum also argued that a warrantless search conducted after Curry was secured on the floor would have only permitted the officers to search areas in his immediate control, and that "the State cannot assert that a 'protective sweep' and/or the 'plain view doctrine' would have permitted the officers to search the residence and recover evidence of a crime." The State did not file a written response to Curry's motion.

**{¶11}** At the hearing on the motion to suppress, Curry's opening statement focused on the false statements in the affidavit, stating,

> [T]here is body-camera footage before the search warrant that does
> reveal that some of the things that were stated in the search warrant

were not correct.

[The statements] were false and recklessly disregarded the truth. Because those statements were false and recklessly disregarded the truth, and without those statements in the search warrant, there was no probable cause for the officers to search.

{¶12} The State, in its opening statement, argued that no false evidence had been offered in support of the search warrant. It argued that "[t]he officers are allowed to do a protective sweep in order [to] make sure that there are no people remaining in that household before they execute the search warrant. And in this case, that's exactly what happened."

{¶13} The first and only witness called by Curry at the suppression hearing was Cincinnati Police Officer John Wolff, who signed the search warrant affidavit. Wolff testified that, on July 25, 2023, he was assigned to the Cincinnati Police Department's violent crime squad and responded to 5489 Gardenview Lane after receiving reports that an individual was firing gunshots in the street. After arriving at the scene, Wolff saw the suspect toss the firearm on the ground and enter a nearby apartment through a window. Wolff, along with several other officers, entered that apartment with their BWCs activated.

{¶14} Wolff's testimony established that Curry and Brooks were the only two people that the officers encountered inside the apartment. The officers had not heard any other person in the apartment or suspected that anyone else was inside it. Wolff assisted with securing Brooks. He explained that she assaulted an officer and was taken out of the apartment and subsequently arrested. Wolff further testified that Curry was prone on the living-room floor. From that position, Curry could not access the closed bedroom or the kitchen. Wolff stated that Curry was removed from the

6

apartment and arrested.

**{¶15}** Wolff testified that he drafted the search warrant affidavit, and the affidavit alleged that several items in the apartment were in the plain view of the officers. Because Curry's motion to suppress argued that this statement was intentionally false and was contradicted by footage from the officers' BWCs, Wolff was shown portions of footage from his own BWC, as well as footage from the BWCs of Officer Mark McChristian, Officer William Kinney, Sergeant Craig Copenhaver, and Officer Cody Dotson, and was questioned about what the footage depicted. Wolff agreed the footage showed a black bag, a green bottle, and a coffee mug on the kitchen counter. He further stated that he saw what he believed to be a digital scale to the right of the bag.[2]

**{¶16}** To illustrate his point that these items had been moved, Curry then showed Wolff photographs taken of these items when the search warrant was executed. Wolff acknowledged that the items had been moved during the execution of the warrant "to document the location of where we recovered those items." He testified that he did not take a still photograph of the items when he first observed them.

**{¶17}** Wolff also identified and discussed a portion of the footage from Copenhaver's BWC footage in which Copenhaver asked Kinney if a "sweep" had been conducted. Wolff explained that the purpose of a sweep was to "ensur[e] that there are no other individuals in there armed with a gun that may be dangerous."

**{¶18}** On cross-examination by the State, Wolff explained that the officers' initial focus upon entering the apartment was "[e]nsuring the safety of everybody that

---

[2] After looking at a photograph of this item, Wolff agreed with defense counsel that it appeared to have a camera on it. He further agreed that cell phones, and not scales, tend to have cameras on them.

was inside the residence and apprehending the individual that was shooting a gun in the street on Winton Terrace." Wolff was then asked when his focus switched from the safety of the residents and the officers to looking for contraband. He responded, "Once everybody was safely placed into custody and placed in the back of police cruisers, the focus switched from safety to investigating the criminal activity that was occurring that day."

{¶19} Wolff also discussed the protective sweep on cross-examination. He was asked what items he looked for during the protective sweep and responded "[e]vidence of the crime of discharging firearms, guns, ammo, gun magazines, things of that nature." Wolff stated that a bag with blue pills and a digital scale on the kitchen counter were recovered during the sweep. After Wolff saw these items, he left the scene and went to the police station to draft a search warrant and affidavit. His brother officers remained on the scene to secure the apartment.

{¶20} Wolff testified that after he left the scene, a second protective sweep was conducted in the closed bedroom. Wolff was notified by Dotson that the dog was secured and that a black handgun was found lying in plain view on a bed. Wolff testified that he added the information about the recovered handgun to the affidavit, but that in his haste he mistakenly stated that "affiant" had seen the weapon, rather than his fellow officer.

{¶21} The State presented testimony from Officer Dotson, who stated that his initial role upon arriving at the scene was to maintain a perimeter position on the apartment to ensure that the suspect did not flee. Dotson explained that after Curry and Brooks were taken into custody, his role changed to securing the apartment while a search warrant was obtained. Dotson was aware that a bedroom in the apartment had not yet been entered because it contained an aggressive dog. He testified that while

8

he was standing by the back door, a neighbor approached him and explained that the dog, which was still inside the bedroom, was not aggressive and offered to take the dog. Dotson removed the dog from the bedroom and conducted a quick search of the room. He saw a black semiautomatic handgun lying on the bed. Dotson testified that he called Wolff to relay the information about the handgun so that Wolff could include that information in the search warrant affidavit.

{¶22} The State also presented testimony from Sergeant Copenhaver. His testimony concerned the Cincinnati Police Department's policy regarding when an officer's BWC should be activated. He testified that the BWCs were turned off during the protective sweep per department policy.

{¶23} During closing argument, Curry argued that the officers could only have conducted a search incident to arrest in the areas immediately accessible to Curry, which did not include the kitchen or bedroom. He also argued that the plain-view doctrine was not applicable because the drugs and the item that the officers alleged to be a scale were not in plain view and were not immediately visible without moving other objects. Relatedly, he contended that the officers lacked probable cause to believe that the black bag by itself or "the item on the counter" was contraband unless other items had been moved around.

{¶24} Curry further argued that "protective sweep does not apply" and that "[a]lthough it does cover a larger area, the officers don't have any articulable facts that would warrant the officers to believe that the area harbored an individual posing a danger to those on the arrest scene." In support, Curry noted that he and Brooks had been arrested and escorted out of the apartment, the gun that was the subject of the call had been recovered outside, and the officers had no indication that any other person was in the apartment. Curry argued that when he and Brooks were taken

9

outside, "that ended the need to conduct a protective sweep when the arrest had been made."

**{¶25}** Curry next contended that the search could not be justified under the doctrine of inevitable discovery. He concluded by stating that, even if the court were to find that the statements in the affidavit were not intentionally false, "they were based on impermissible uses of the plain view doctrine and protective sweep, rendering probable cause invalid for the search warrant."

**{¶26}** The State argued in closing that Curry failed to establish that Wolff lied in the affidavit about whether the contraband referenced in the affidavit was in plain view. When it addressed the protective sweep, it said, "[The defense] makes the assumption that the officers had no threat, and, therefore, did not have any right to conduct the protective sweep, and, therefore, I assume, they're lying. None of this raises to the level of perjury. None of this raises to anything that would make the warrant invalid."

**{¶27}** After the hearing, Curry filed a brief in support of closing argument, attacking the protective sweep as unconstitutional and citing applicable case law in support of that argument. The State did not file a response to this supplemental brief.

**{¶28}** Approximately one month after Curry filed the supplemental brief, the trial court issued a decision denying the motion to suppress. The decision noted that Curry had filed a brief in support of closing argument without leave of court, but the State did not object, request that it be stricken, or respond. Thus, the court accepted and considered Curry's supplemental brief.

**{¶29}** The trial court set forth the following findings of fact in the decision:

Police then used a battering ram and entered the residence approximately fifteen minutes after arriving on the scene.

Police made their way through the residence's hall and then the kitchen. The Defendant was not visible. A dog was barking within the residence. First, the female occupant leaves and is detained by police. The Defendant finally complies with police commands and lies on the floor. He is then taken into custody. The large dog is still barking in the bedroom. At the command of Sergeant Kopenhaver [sic], the police sweep the residence to look for other individuals. They leave the dog in the bedroom after checking for more people. The two individuals are taken into custody. The ranking officer then gives the command to turn off the body worn cameras.

While sweeping the residence but without the body worn cameras activated, Officer Wolff saw a bag of blue pills and what appears to be a scale in the corner of the kitchen just below the visible syringe . . . . The scale turned out to be a cell phone. Based on the items viewed Officer Wolff sought a search warrant. The officers then proceeded to secure the residence and wait for the search warrant. While enroute to get the search warrant Officer Dotson called Officer Wolff and stated that they secured the dog in the bedroom (gave it to neighbor eventually) and discovered another firearm in the bedroom on a bed . . . .

{¶30} The trial court found that Curry failed to establish that the affidavit in support of the search warrant contained false representations. It stated that Curry "only offered the omission of body worn camera as proof of the falsity of Officer Wolff's affidavit. This is insufficient to support Defendant's claim."

{¶31} The trial court also found Curry's argument that the protective sweeps

11

were unconstitutional to be without merit. After setting forth the applicable law on protective sweeps, the court stated that "[t]he Defendant does not take issue with the protective sweep but in only so far as to the discovery of the narcotics. The Court concludes that there were specific and articulable facts for the Cincinnati Police to search for other assailants, other firearms, and other possible persons in the residence."

{¶32} Curry subsequently pled no contest to all charges and received an aggregate sentence of 60 months of imprisonment. He now appeals.

## II. Motion to Suppress

{¶33} In his first assignment of error, Curry argues that the trial court erred in denying his motion to suppress. Curry challenges both the trial court's determination that the officers were justified in conducting the protective sweeps before the warrant was obtained and its determination that he did not meet his burden of establishing that the officers made intentionally false statements in the search warrant affidavit.

### A. Standard of Review

{¶34} Our review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Wright*, 2022-Ohio-2161, ¶ 11 (1st Dist.); *accord State v. Hale*, 2024-Ohio-4866, ¶ 12. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. *Wright* at ¶ 11; *Hale* at ¶ 12. But we review questions of law de novo, without any deference to the trial court's legal conclusions. *Wright* at ¶ 11; *Hale* at ¶ 12.

### B. Protective Sweeps

{¶35} Curry first argues that the protective sweeps of his apartment were unconstitutional and in contravention of the Fourth and Fourteenth Amendments to

12

the United States Constitution and Article 1, Section 14 of the Ohio Constitution, because the officers lacked a reasonable belief that the area to be swept harbored a danger to those on the arrest scene.

### 1. Waiver

{¶36} Although the State does not argue that Curry waived a challenge to the warrantless search and the protective sweeps, we address the issue of waiver because the dissenting opinion contends that Curry waived the issues.

{¶37} "'A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below.'" *State v. Camper*, 2023-Ohio-4673, ¶ 48 (10th Dist.), quoting *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10. However, courts have generally held that if an issue is raised in a motion to suppress, at the suppression hearing, or in supplemental briefing, then that issue is not waived. *See, e.g., State v. Mishler*, 2024-Ohio-1085, ¶ 13 (9th Dist.) ("The Supreme Court stressed that a motion to suppress is merely a procedural vehicle to put the ball in play." (Cleaned up.)); *State v. Riedel*, 2017-Ohio-8865, ¶ 48 (8th Dist.) ("Riedel waived this unlawful-protective-sweep argument for purposes of this appeal by failing to raise it in the trial court *in any manner*." (Emphasis added.)); *State v. Bradley*, 2025-Ohio-58, ¶ 10 (2d Dist.) ("Bradley did not raise the reliability of the informant or the tip in his written motion to suppress, and he did not address the issue at the hearing *or in his post-hearing memorandum*. Because this argument is raised for the first time in this appeal, we decline to address it." (Emphasis added.)); *State v. Weaver*, 2024-Ohio-5028, ¶ 30 (2d Dist.) (holding that the record was clear that "both parties were aware of Weaver's challenge to whether Officer Lykins had reasonable, articulable suspicion to conduct the [field sobriety tests]").

{¶38} The dissenting opinion argues that Curry acknowledges in the

13

"Statement of the Case" section of his appellate brief that his motion to suppress only challenged the adequacy of the affidavit. While the first sentence of that section of Curry's brief does state that Curry's motion was based on an allegation that the affidavit offered in support of the warrant was untruthful, he further asserts in the same paragraph of his brief that the officer conducting the protective sweep did not mention during the suppression hearing that he was looking for potentially dangerous people and admitted that the police conducted a warrantless search of the apartment for evidence.

{¶39} As illustrated in the preceding section of this opinion, the warrantless-search and protective sweeps issues were, in fact, raised in the initial suppression motion and at the suppression hearing. Further, both the prosecution and the court were on notice of these issues. In fact, on the issue of waiver, the State conceded in its appellate brief that, "as part and parcel of the somewhat idiosyncratic manner in which [Curry] chose to structure his initial motion to suppress, he may have in fact raised this issue—at least by implication."

{¶40} Although Curry's "motion for Franks Hearing and to suppress evidence" primarily argued that the affidavit submitted in support of the search warrant contained false statements regarding whether the observed contraband was in plain view, it additionally challenged the validity of the warrantless search conducted after Curry was handcuffed. The motion asserted that such a search would have only permitted the officers to search areas in Curry's immediate control, and that "the State cannot assert that a 'protective sweep' and/or the 'plain view doctrine' would have permitted the officers to search the residence and recover evidence of a crime." This language "put the ball in play," and thus put the State on notice that the warrantless search and the protective sweeps were being challenged. *See Mishler,* 2024-Ohio-

1085, at ¶ 13 (9th Dist.), quoting *State v. Codeluppi*, 2014-Ohio-1574, ¶ 8 ("[T]he Ohio Supreme Court recognized that the law 'does not require that a defendant set forth the basis for suppression in excruciating detail . . . .'").

**{¶41}** The dissenting opinion states that the motion to suppress did not comply with Crim.R. 47 because the "motion did not challenge the protective sweep with the required particularity and specificity." The dissenting opinion faults the defendant for not citing "legal authority specific to a protective sweep" and states that "the requested relief did not mention a warrantless search or a protective sweep." However, once a defendant alleges a warrantless search, it is the State's burden to raise an exception to the warrantless search. *See United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) ("The government faults Archibald for not arguing in the district court that the protective sweep was unlawful under the first *Buie* test, but the government, not Archibald, had the burden to prove the constitutionality of the warrantless search of Archibald's residence."); *see also State v. Watts,* 2024-Ohio-635, ¶ 5 (1st Dist.) (holding that once the defendant establishes the lack of a warrant and the grounds upon which the warrantless search is being is challenged, the State has the burden of proof to justify the warrantless search). Thus, the motion to suppress sufficiently put the State on notice that it would have to prove the constitutionality of the warrantless search with an exception to the warrant requirement. The memorandum to the motion to suppress anticipated that the State would argue that there was a valid protective sweep, but it was not required to go into detail about something that was the State's burden.

**{¶42}** Further, the defense focused on the *Franks* issue in its opening statement during the suppression hearing because it had the burden to prove that the information in the affidavits was intentionally or recklessly false. But the defense did

not narrow the issues or confirm that it was no longer contesting the warrantless search and the protective sweep, as the dissenting opinion suggests. The facts of this case are nothing like those in *State v. Jackson*, 2021-Ohio-517 (1st Dist.), upon which the dissenting opinion relies. In *Jackson*, defense counsel affirmatively stated, "But I'm not questioning the stop." *Id.* at ¶ 9. Based on that concession, this court held that any challenge to the stop of Jackson's vehicle was abandoned. *Id.* at ¶ 10. The record before us contains no such affirmative statement abandoning Curry's challenge to the protective sweeps.

{¶43} If the warrantless-search and protective sweeps issues had been abandoned at the suppression hearing, the State would not have addressed the validity of the protective sweeps during its opening statements. It did so because it was the State's burden to prove an exception to the warrant requirement. The State indicated its awareness that a challenge to the sweeps was in play. When discussing whether the officers were required to activate their BWCs when searching the apartment, the State argued,

> And the time when [the body-worn camera] can be deactivated is after there was the determination to get a search warrant. The officers are allowed to do a protective sweep in order [t]o make sure that there are no people remaining in that household before they execute the search warrant. And in this case, that's exactly what happened.

{¶44} Further, both Curry and the State elicited testimony from Officer Wolff about the protective sweeps.

{¶45} Curry also argued during closing argument that the protective-sweep doctrine did not justify the warrantless search, contending that the sweeps were not justified because the officers lacked a reasonable suspicion that anyone else was in the

apartment. He further contended in closing argument that even if the trial court was not persuaded that the affidavit offered in support of the search warrant contained statements that were intentionally false, it was "based on impermissible uses of the plain view doctrine and protective sweep, rendering probable cause invalid for the search warrant. This would still require suppression."

{¶46} Although it disagrees that Curry had raised the issues of the warrantless search and protective sweeps in his motion to suppress or during the suppression hearing, the dissenting opinion at least agrees that these issues were raised in the supplemental brief that was filed after the suppression hearing. In this supplemental brief, Curry specifically challenged the protective sweeps and provided legal authority in support of his argument. Nevertheless, the dissenting opinion contends, the trial court should not have addressed the issue because the defendant did not seek leave to file the supplemental memorandum.

{¶47} In the trial court's "Entry and Decision," the court addressed this supplemental filing and stated, "The Defendant filed, without leave, a brief in support of closing argument on May 17, 2024. The State did not object nor request this filing be struck." Thus, the trial court, *in its discretion*, chose to consider the supplemental argument. And the fact that it did supports a determination that the State had notice that the issues were raised.

{¶48} On that point, the State also had an opportunity to respond to Curry's supplemental argument because the trial court did not rule on the motion to suppress until a month after the supplement was filed. After Curry filed the supplemental argument, the State could have filed a response, or it could have asked the trial court to reopen the hearing so that it could present additional evidence regarding this argument. But the State did neither. It chose not to respond.

**{¶49}** We accordingly hold that Curry "adequately raise[d] the basis of his challenge" to the warrantless search on the ground that the protective sweeps were unconstitutional, and that he has not waived this argument on appeal. *See Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988).

## 2. *Legal Analysis of Protective Sweeps*

**{¶50}** "'The touchstone of the Fourth Amendment is reasonableness.'" *State v. Leak*, 2016-Ohio-154, ¶ 14, quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Ohio Constitution. *Wright,* 2022-Ohio-2161, at ¶ 12 (1st Dist.). Absent an exception, warrantless searches are per se unreasonable. *State v. Whitfield*, 2020-Ohio-2929, ¶ 10 (1st Dist.).

**{¶51}** Curry does not dispute that the initial warrantless entry into the apartment was constitutionally permissible under the exigent-circumstances exception to the warrant requirement. *See State v. Applegate*, 68 Ohio St.3d 348, 349 (1994), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) ("A warrantless police entry into a private residence is not unlawful if made upon exigent circumstances, a 'specifically established and well-delineated exceptio[n]' to the search warrant requirement."); *State v. Buck*, 2017-Ohio-8242, ¶ 19-20 (1st Dist.), quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) ("Where exigent circumstances exist, a warrantless search is reasonable because 'there is a compelling need for official action and no time to secure a warrant.'"). Thus we express no opinion on the initial warrantless entry.

**{¶52}** However, there was no testimony at the suppression hearing, and the trial court did not find, that any of the contraband listed in the search warrant affidavit was in plain view of and seen by the officers during the initial warrantless entry into the apartment before Brooks and Curry were arrested.

18

**{¶53}** The trial court specifically found that after Brooks and Curry were taken into custody, and after the officers had turned off their BWCs, the officers conducted a protective sweep of the residence, during which they found contraband in plain view. The testimony at the suppression hearing supports these factual findings and the parties do not dispute them.

**{¶54}** The trial court concluded that the warrantless protective sweep was lawful because "there were specific and articulable facts for the Cincinnati Police to search for other assailants, other firearms, and other possible persons in the residence." Although we accept the trial court's findings of fact, we must disagree with its legal conclusion.

**{¶55}** A protective sweep is an exception to the warrant requirement. *State v. Mathews*, 2015-Ohio-1047, ¶ 10 (2d Dist.); *State v. Levengood*, 2016-Ohio-1340, ¶ 23 (5th Dist.). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990); *accord State v. Adams*, 2015-Ohio-3954, ¶ 188. Protective sweeps are permissible where the searching officer "possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." (Cleaned up.) *Buie* at 327; *accord State v. Gill*, 2024-Ohio-2792, ¶ 95 (1st Dist.). Where a protective sweep is justified, it must "last[] no longer than is necessary to dispel the reasonable suspicion of danger." *Buie* at 335-336; *Gill* at ¶ 95.

**{¶56}** First, contrary to the trial court's holding, a protective sweep does not permit officers to search for "other firearms." The purpose of a protective sweep is not to search for weapons, but rather to ensure "that the area swept [does not] harbor[] an

individual posing a danger to the officer or others." *Buie* at 327.

{¶57} Second, there were not "specific and articulable" facts in this case to support a reasonable belief that the apartment harbored an individual that could pose a danger to the officers. *See Buie*, 494 U.S. at 327. The officers responded to 5489 Gardenview Lane in response to a report that an individual was firing gunshots in the street. They saw the individual in question dispose of the firearm outside and they recovered the weapon. The officers subsequently entered the apartment, secured both Brooks and Curry, and removed them from the apartment.

{¶58} It was not until Brooks and Curry were taken outside that the officers conducted the first protective sweep. And at that time, they had not been presented with any "specific and articulable facts" that the apartment harbored an individual that could pose a danger to their safety. The BWCs showed that, before breaching entrance into the apartment, the officers had surveilled it for approximately 15 minutes. There was no testimony at the suppression hearing that, during that period, the officers saw or suspected that anyone else entered the apartment.

{¶59} Other than the back bedroom, the officers could plainly see that the apartment harbored no other individual. And Officer Wolff testified that the officers had not heard anyone else moving around the apartment. No officer testified that police were concerned that there was another person in the bedroom. This lack of concern is evident from the officers' comments on the BWC recordings. It was clear that officers were only concerned that there was an aggressive dog in the bedroom.

{¶60} The facts of this case are similar to those in *State v. McLemore*, 2012-Ohio-521 (2d Dist.). In *McLemore*, officers responded to a call for a domestic dispute. *Id.* at ¶ 3. The defendant exited from the apartment that officers had surrounded and was secured. *Id.* Several officers then entered the residence to conduct a protective

sweep because they were concerned that it might harbor other individuals that could pose a threat to them as they detained the defendant. *Id.* During the protective sweep, officers saw shotgun shells and a gun cabinet with a firearm missing. *Id.*

**{¶61}** The trial court held that the protective sweep of the apartment was unconstitutional, *id.* at ¶ 5, and the Second District agreed, *id.* at ¶ 14. The Second District noted, "No perpetrators other than Defendant were implicated in the domestic violence incident for which Defendant was arrested," and that, after the defendant was taken into custody, "there was no suggestion either that another person or persons remained inside that residence or that they posed a threat to the safety of the officers or others." *Id.* at ¶ 11. The court further explained,

> Upon arrival, four police officers surrounded the house, and they did not see anyone or hear any voices coming from inside the home. The officers never asked defendant if anyone else was inside the home, and they did not knock on the door or call out to inquire about any other person's presence. After defendant exited the home and was taken into police custody outside the home, he no longer had access to any weapons or evidence inside the residence and posed no threat to the officers or anyone else.

*Id.* at ¶ 12. The court rejected an argument that the protective sweep was justified because the officers were unaware if anyone else was in the apartment, stating, "Not knowing whether anyone else was inside the residence is an insufficient pretext for a protective sweep to learn whether anyone is, in fact, inside." *Id.* at ¶ 13.

**{¶62}** The facts of this case are also similar to *State v. Sharpe*, 2008-Ohio-267 (2d Dist.). In *Sharpe*, the police had a warrant to arrest Sharpe on a domestic-violence charge. *Id.* at ¶ 3. After receiving a tip that Sharpe could be found at a particular

residence and that he might have a firearm, officers were dispatched to the specified location. *Id.* at ¶ 5. After several hours, Sharpe exited from the residence, surrendered to the police, and was taken into custody. *Id.* at ¶ 9. Officers then entered the residence to conduct a protective sweep, where they discovered drugs. *Id.* at ¶ 10 and 14. Sharpe filed a motion to suppress challenging the warrantless protective sweep of the residence. *Id.* at ¶ 18. The trial court denied the motion. *Id.* at ¶ 19.

**{¶63}** The Second District reversed. *Id.* at ¶ 47. It explained that before a protective sweep may be conducted, officers must have "some positive indication that another person or persons remain in the residential premises where a subject is arrested and that they pose a threat to the safety of officers or others." *Id.* at ¶ 46. The court noted that "[m]ere suspicion" that a weapon may be inside a residence is insufficient to justify a protective sweep, as is lack of knowledge as to whether any other persons are present. *Id.*

**{¶64}** As in *McLemore* and *Sharpe*, once the officers in this case secured Brooks and Curry outside of the apartment, those two individuals no longer had access to any weapons, and the officers had no suggestion or reason to believe that any other person was in the residence. Under these circumstances, the officers lacked "a reasonable belief, based on specific and articulable facts," that the apartment "harbored an individual posing a danger to the officer[s] or others." (Cleaned up.) *See Buie*, 494 U.S. at 327.

**{¶65}** The State, to its credit, seems to concede this determination. It stated in its appellate brief that "to the extent that [Curry] raised the propriety of the 'protective sweep' in the first place, Defendant may actually have a fair point." The State elaborated on this concession, stating,

> While the trial court ultimately found to the contrary, here the officers

offered little in the way of 'specific and articulable facts,' beyond that of the closed bedroom door, that would have reasonably led them to believe that a 'protective sweep' was necessary in order to ensure their safety from some undetermined third party after they had already arrested and removed Defendant and Brooks (and themselves) from the apartment.

**{¶66}** We accordingly hold that the warrantless protective sweeps, during which the officers saw the drugs and weapon in plain view, were conducted in violation of Curry's rights under the Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Ohio Constitution.

### C. *Inevitable Discovery*

**{¶67}** The State argues that even if the protective sweeps are found to be unconstitutional, the motion to suppress was nonetheless properly denied because the firearm recovered from the bedroom was subject to inevitable discovery. In support, the State argues that the officers, after having secured Curry and Brooks, were still responsible for retrieving and securing care for the dog that was contained in the bedroom. When the officers did so, the State posits, they would have discovered the firearm in plain view on the bed.

**{¶68}** "Under the inevitable-discovery exception to the exclusionary rule, illegally obtained evidence is admissible at trial if it is established that the evidence would have ultimately or inevitably been discovered during the course of a lawful investigation." *State v. Pippin*, 2017-Ohio-6970, ¶ 19 (1st Dist.). We need not reach the merits of the State's inevitable-discovery argument because it waived the argument by failing to argue it below.

**{¶69}** The State did not file a response to Curry's motion to suppress or his

23

supplemental brief in support of closing argument. And it did not argue inevitable discovery at the suppression hearing. Under these circumstances, the State has waived any argument regarding inevitable discovery. *See State v. Oliver*, 2023-Ohio-1550, ¶ 98 (10th Dist.) (holding that the State waived the issue of inevitable discovery for appeal where it did not argue inevitable discovery in the trial court); *see also State v. Fann*, 2007-Ohio-6985, ¶ 38 (8th Dist.); *State v. Bing*, 134 Ohio App.3d 444, 449 (9th Dist.).

**{¶70}** Because the protective sweeps were conducted in contravention of Curry's rights under the Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Ohio Constitution, the trial court erred in denying Curry's motion to suppress. Curry's first assignment of error is accordingly sustained.

**{¶71}** Our holding renders moot Curry's remaining arguments under his first assignment of error and his second assignment of error, in which he argues that the trial court erred in the imposition of sentence.

### III.    Conclusion

**{¶72}** For the foregoing reasons, we hold that the trial court erred by denying Curry's motion to suppress. We therefore reverse the judgment of conviction and remand the cause to the trial court for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**NESTOR, J.**, concurs.
**ZAYAS, P.J.**, dissents.

**ZAYAS, P.J.**, dissenting.

**{¶73}** I must respectfully dissent because Curry waived the issue of whether the warrantless search was unconstitutional. The record establishes that the motion

24

itself challenged the veracity of the search-warrant affidavit, any mention of protective sweeps in the filed motion was insufficient to meet the particularity requirements of Crim.R. 47, the memorandum failed to include any legal authority regarding a protective sweep, and the trial court understood that the sole issue challenged by the motion was the veracity of the affidavit. Additionally, even if it could be said that the motion properly included a challenge to the protective sweeps, at the outset of the hearing, the defense confirmed that the sole challenge was to the search warrant, which is further supported in Curry's appellate brief where he admitted that the motion was limited to the veracity of the affidavit.

{¶74} Consequently, Curry waived his opportunity to raise this additional suppression issue on appeal. *See State v. Gales*, 2022-Ohio-776, ¶ 14 (9th Dist.), citing *State v. Walters*, 2012-Ohio-2429, ¶ 6 (9th Dist.), and *State v. Brown*, 2006-Ohio-1905, ¶ 7 (9th Dist.); *State v. Schindler*, 70 Ohio St.3d 54, 58 (1994) ("By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived."); *State v. Fricke*, 2016-Ohio-2747, ¶ 24 (2d Dist.) ("If a motion to suppress fails to state a particular basis for relief, that issue is waived and cannot be argued on appeal."); *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 18, quoting *State v. Peagler*, 76 Ohio St.3d 496, 500 (1996) ("when a defendant makes stipulations or narrows the issues to be decided at a suppression hearing, the prosecution need not 'prove the validity of every aspect of the search.'").

### *Franks* Motion to Suppress

{¶75} Curry filed a motion entitled "Motion for *Franks* Hearing and to Suppress Evidence" seeking to suppress the evidence obtained pursuant to the search

warrant because the warrant was granted based on false statements. The motion challenged the validity of the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *See State v. Scott*, 2003-Ohio-5011, ¶ 16 (7th Dist.) (Generally, a challenge to the veracity of a warrant's supporting affidavit is made through a *Franks* motion, named for the aforementioned case of *Franks v. Delaware*.). "The gist of *Franks* is that if a credible challenge is made to the veracity of an affidavit used to secure a search warrant, a hearing must be afforded the defendant to allow him to proffer evidence to show that the information in the affidavits [was] intentionally or recklessly false." *State v. Taylor*, 2010-Ohio-6580, ¶ 19 (4th Dist.).

**{¶76}** At the hearing, the defendant must establish by a preponderance of the evidence that the affiant, in this case, a law-enforcement officer, intentionally or recklessly included a false statement in the affidavit. *See Franks* at 156. If the defendant meets his burden of proof, the court must then redact the false statement from the search-warrant affidavit and determine whether the remaining allegations are sufficient to support a finding of probable cause. *See id.* If the remaining statements fail to establish probable cause, "the search warrant must be voided and the fruits of the search excluded." *Id.*

**{¶77}** In his motion, Curry alleged that the affidavit in support of the search warrant "was intentionally false and recklessly disregarded the truth about [a baggie containing a white substance, a baggie containing blue pills next to a digital scale, and a handgun] being in plain view." Curry further argued that absent the false statements, "the affidavit provided insufficient probable cause for a search warrant." In his request for relief, Curry specifically sought a hearing on the *Franks* motion and an order suppressing all the evidence obtained during the search because there was no probable cause to issue the search warrant.

26

**{¶78}** Crim.R. 47 unambiguously requires any pretrial motion to "state with particularity the grounds upon which it is made and shall set forth the relief or order sought." *See* Crim.R. 47 (A motion "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit."); *State v. Toran*, 2023-Ohio-3564, ¶ 36 (Gallagher, J., concurring). "By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *Toran* at ¶ 36, citing *Shindler*, 70 Ohio St.3d at 58 (collecting cases); *State v. F.O.E. Aerie 2295*, 38 Ohio St.3d 53, 54-55 (1988) (failure to comply with Crim.R. 47 results in waiver of the argument).

**{¶79}** Accordingly, to suppress evidence obtained pursuant to a warrantless search, the defendant is required to "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *Xenia v. Wallace*, 37 Ohio St.3d 216, 219 (1988). The prosecutor is not required to anticipate the specific legal and factual grounds for a defendant's challenge to a warrantless search. *Id.* at 218. "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." *Id.* To that end, the defendant must clarify the legal and factual grounds upon which the defendant challenges the evidence so that the prosecutor may adequately prepare for the suppression hearing. *Id.*

**{¶80}** In this case, it is undisputed that the *Franks* motion met the Crim.R. 47 particularity and specificity requirement. The motion set forth the specific statements

in the affidavit that Curry alleged were false, the reasons he believed the statements were false, citations to the relevant legal authority, *Franks v. Delaware*, and the relief requested was a *Franks* hearing and an order suppressing the evidence seized pursuant to the search warrant. However, the motion did not challenge the protective sweeps with the required particularity and specificity. The motion itself did not specifically challenge the constitutionality of the warrantless protective sweeps, is devoid of any citations to legal authority specific to protective sweeps, and the requested relief did not mention a warrantless search or a protective sweep. *See* Crim.R. 47; *Toran* at ¶ 32, (pointing out that the motion to suppress was deficient because defendant failed to challenge the impoundment policy and the motion contained "[n]o legal authority in support of that proposition.").

{¶81} Further Curry even acknowledged his waiver in his appellate brief. Under the "Statement of the Case," Curry confirmed that he raised one discreet issue in his motion to suppress. He explained that the motion challenged the adequacy of the affidavit in support of the search warrant issued for his residence. Curry discussed nothing further as a basis for the motion to suppress. Thus, Curry's brief is consistent with the prayer for relief in the *Franks* motion seeking to exclude all evidence seized during the search "because there was no probable cause to issue a search warrant."

{¶82} Accordingly, I conclude that Curry did not state with particularity that he was also challenging the protective sweeps or requesting to exclude any evidence obtained during a warrantless search as required by Crim.R. 47.

### The Limited Scope of the Hearing

{¶83} Even if the motion complied with Crim.R. 47, Curry limited the scope of the hearing to a *Franks* challenge. At the outset of the hearing, the State and the court were properly apprised that Curry sole's challenge concerned the veracity of the

28

warrant. Accordingly, Curry waived that protective-sweep argument. *See id.*; *F.O.E. Aerie 2295*, 38 Ohio St.3d at 54-55.

**{¶84}** "[W]hen a defendant makes stipulations or narrows the issues to be decided at a suppression hearing, the prosecution need not 'prove the validity of every aspect of the search.'" *Wintermeyer*, 2019-Ohio-5156 at ¶ 18, quoting *Peagler*, 76 Ohio St.3d at 500; *State v. Jackson*, 2021-Ohio-517, ¶ 10 (1st Dist.) (although defendant raised the issue in his motion to suppress, he waived the issue by limiting the issues in open court).

**{¶85}** At the beginning of the suppression hearing, the trial court confirmed that "[a]s to the motion to suppress, since this is a search warrant, the burden is on the defense. So the burden is on you, [defense counsel]." Significantly, Curry did not dispute, contradict, or clarify the court's characterization that the sole issue was the validity of the search warrant. Rather, Curry directly responded with the basis of his motion in his opening statement as follows:

> Judge, I submitted a motion for a *Franks* hearing and to suppress evidence. The basis of that motion is officers were called to 5489 Gardenview Lane. There was a 911 call. Officers arrived on scene. They made entry and had contact with Mr. Shawn Curry.

> After they had contact with him, the officers filed for a search warrant. The search warrant is not on body camera, however, there are some body-camera footage -- there is body-camera footage before the search warrant that does reveal that some of the things that were stated in the search warrant were not correct.

> They were false and recklessly disregarded the truth. Because those statements were false and recklessly disregarded the truth, and

29

without those statements in the search warrant, there was no probable cause for the officers to search.

**{¶86}** Accordingly, Curry confirmed that the sole issue to be decided was whether the affidavit contained false statements rendering the search warrant invalid. When the court stated that the defense had the burden of proof because Curry was challenging the search warrant, Curry did not object or inform the court that he was also challenging the warrantless search. The trial court understood Curry's argument to be a challenge to the search warrant, and when Curry did not dispel the trial court of that interpretation of his motion, Curry limited his argument to the sufficiency of the affidavit. *See Wintermeyer* at ¶ 18 (noting that the State need not prove the validity of every aspect of a search when the defendant narrows the issues to be decided at the suppression hearing); *Peagler* at 500 (explaining that when defendant narrows the suppression issues, he cannot then complain of an error he himself induced).

**{¶87}** While it is true that a suppression motion "is merely a procedural vehicle to 'put the ball into play,'" the purpose is to provide notice to the court and the State of the issues to be decided. *See State v. Codeluppi*, 2014-Ohio-1574, ¶ 13. In this case, the record is clear that the only ball Curry put into play, as memorialized by the court's inquiry into the scope of the motion, was a challenge to the veracity of the search-warrant affidavit. Thus, at the onset of the hearing it was established that the hearing was limited to a challenge to the veracity of the warrant's affidavit and that Curry was the only party who carried the burden of proof.

**{¶88}** Further, during his closing argument, Curry argued that the statements in the affidavit were false because "they were based on impermissible uses of the plain view doctrine and protective sweep, rendering probable cause invalid for the search

warrant." The court inquired if any case law supported the legal proposition that the "improper use of the plain view doctrine or for a sweep goes to that disregard for the truth or perjury." The court reiterated its understanding that Curry had to prove the "officers perjured themselves or had a reckless disregard for the truth" and that is not "associated with any plain view doctrine or other issue because those issues deal with warrantless searches." The trial court reminded Curry that "[t]he improper sweep and in plain view are two exceptions to the warrant requirement," and Curry was challenging the search warrant. When the court reiterated, "We have a warrant. You are attacking the warrant," Curry's singular response was, "Correct." Again, Curry agreed that his challenge was confined to the search warrant and did not orally request to expand the scope of the hearing to include a challenge to the warrantless search.

{¶89} However, after the hearing, Curry filed a written supplemental closing argument, without leave of the court, arguing for the first time that the protective sweeps were unconstitutional and exigent circumstances did not apply. Curry argued there was no need to conduct protective sweeps once the target of the arrest, Curry, was arrested and the firearm was recovered. Curry further argued that there was no indication that there were any other occupants in the residence rendering the protective sweeps unconstitutional. Curry concluded by contending that "[b]ecause the entry was unreasonable, evidence seized pursuant to a search warrant based on probable cause obtained during the warrantless search must be suppressed pursuant to the derivative evidence rule."

{¶90} Thus the record demonstrates that after the hearing and the presentation of evidence concluded, Curry attempted to expand the scope of the *Franks* motion in his written closing argument to include an argument that the warrantless search was unconstitutional. Curry never moved the trial court to amend

31

his motion or sought leave to file a second motion to suppress to address this issue. Consequently, Curry waived this issue. *See* Crim.R. 12(H); *City of Columbus v. Ridley*, 2015-Ohio-4968, ¶ 23 (10th Dist.) ("Appellant never requested leave, either orally or in writing, to amend his motion to include the constitutional argument, and the record contains nothing to support a finding of good cause for relief from the waiver.").

**{¶91}** In the trial court's decision denying the motion to suppress, the court addressed Curry's belated new challenge to the protective sweep by finding that "Defendant does not dispute the call to the police nor by extension their subsequent response. As such, the court concludes that the police were faced with a sufficient emergency to permit a warrantless intrusion into the Defendant's residence." Because the constitutionality of the warrantless search was not at issue, the court should not have addressed this belated argument.

**{¶92}** Curry argued that during the *Franks* hearing, one of the officers admitted to looking for evidence during the protective sweeps. If this testimony prompted Curry to attempt to expand the scope of the motion, Curry should have notified the State and the court by moving, either orally or in writing, to challenge the warrantless search. While a trial court may expand the scope of a suppression hearing beyond the issues set forth in a suppression motion, it can only do so when "the matters within the expanded scope were material to the suppression sought, and so long as the State had a reasonable opportunity to prepare itself for the hearing." *State v. Fowler*, 2016-Ohio-5940, ¶ 23 (5th Dist.), citing *State v. Byrnes*, 2014-Ohio-1274, ¶ 12 (2d Dist.), quoting *State v. Blackburn*, 1994 Ohio App. LEXIS 1171, *4 (2d Dist. Mar. 23, 1994).

**{¶93}** In this case, the issue in front of the trial court was whether the affidavit contained two false statements. Once the court determined that Curry failed to prove

the statements were false, the court should have overruled the motion without addressing the protective-sweep issue because it was immaterial to whether the statements were false. *See id.*

**{¶94}** Moreover, the State was not afforded an opportunity to present evidence on the grounds not raised by Curry in his motion to suppress. The first three paragraphs in the motion generically cited the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. The fourth paragraph discussed voiding a search warrant and cited exclusively to *Franks v. Delaware*, and the fifth paragraph explained the alleged falsehoods in the affidavit submitted by Wolff. The next four paragraphs were focused on countering potential arguments of the State preceded by "[t]he State may try to argue" and "[t]he State cannot assert." I cannot interpret these arguments as a specific challenge to the warrantless search that occurred prior to the receipt of the warrant. The last paragraph requested a *Franks* hearing and an order suppressing all evidence because "there was no probable cause to issue a search warrant."

**{¶95}** During the hearing, the State focused on proving that the affidavit contained no falsehoods. The record contains limited evidence regarding the warrantless search and no argument regarding inevitable discovery because Curry failed to challenge the warrantless search as a basis to suppress evidence either in his motion to suppress or at the hearing on that motion. I cannot hold that the State waived a protective-sweep argument or an inevitable-discovery argument when it lacked notice of the issues, and therefore, had no opportunity to address the issues.

**{¶96}** Curry himself conceded in his brief that "he filed a motion to suppress the evidence recovered in the apartment where he was arrested on the basis that the search warrant was obtained with an affidavit that was knowingly and intentionally,

33

or with reckless disregard, untruthful." Curry also requested a plain-error review for any suppression issues that were not preserved for appeal without specifying what issues he may have waived. As the State argued in its brief, Curry acknowledged that waiver applied to his motion to suppress, and if Curry raised any issue with regard to the protective sweeps, he did so only by implication. The State further argued that "it is incumbent upon a defendant to 'raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.'" *See Wallace*, 37 Ohio St.3d at 219.

### The *Franks* Motion was Properly Denied

**{¶97}** Because Curry waived his challenge to the warrantless search, I will address his argument that he satisfied his burden to show the police officer made false statements in the affidavit for the search warrant.

**{¶98}** In his motion, Curry alleged that "the affidavit was intentionally false and recklessly disregarded the truth about these items being in plain view." Curry challenged the following two statements in the affidavit:

> While the affiant was inside 5489 Gardenview placing Sean Curry into custody the affiant observed a baggie containing a white powdery substance believed to be fentanyl and a baggie containing unknown pills next to a digital scale in plain view on the kitchen counter.
>
> The affiant also observed an unknown make and model semi-automatic in plain view on the bed in the bedroom.

**{¶99}** Curry challenged the veracity of two statements on the basis that the officer lied that the drugs, scale and gun were in plain view. To support this contention, Curry argued that one photo from the BWC established that the items were moved, and the fact that the items were moved, established that the affiant lied that

the drugs and scale were in plain view. With respect to the gun, Curry argued that it was not in plain view because the bedroom door was closed, thus showing the affiant lied. Curry alleged that Wolff's testimony that the contraband on the counter was in plain view was not credible because the officers' BWCs footage prior to the search did not show the items on the counter.

{¶100} Wolff testified that he drafted the affidavit to secure the warrant and signed it under oath. Included in the affidavit was Wolff's observation of a digital scale on the kitchen counter. Wolff was provided with a still shot from the BWC showing the items on the counter. Wolff testified that the scale he observed was not visible from that angle. Wolff testified that he could see the items while at the scene.

{¶101} Wolff further testified that he observed a bag containing pills and a digital scale on the kitchen counter. Wolff was presented with a photo he had taken after the search and explained to the court that "the bag was lined up close to this – these digital phones. The Febreze bottle was here to the left, and I believe it was at an angle. And I believe these bags were behind the bag over here." When he looked, he could see the drugs as he was conducting the sweep. Once he saw the drugs, he left the scene to draft the warrant.

{¶102} While he was drafting the search warrant, Wolff received a call from Dotson informing him that the officers had secured the dog and were able to sweep the bedroom. Wolff included that information in the affidavit, but testified that in his haste to draft the affidavit, he made an error. He put "the affiant" observed the handgun in plain view instead of "brother officers."

{¶103} In overruling the motion, the court first noted that Curry "specifically argues that the police did not have probable cause for the issuance of a search warrant because the police presented an affidavit in support of the search warrant that 'was

intentionally false and recklessly disregarded the truth about [contraband] being in plain view.'"

**{¶104}** The trial court found that that the officers adequately explained the discrepancy between the BWC still photos, taken prior to the search, and the photograph taken after the search, and that the testimony was not contradicted by any other evidence. The court credited Wolff's testimony and found, "Officer Wolff was lawfully in place where he could 'see' the narcotics. Such a viewing supplies the necessary probable cause for the issuance of the search warrant." The court concluded that, "Defendant only offered the omission of body worn camera as proof of the falsity of Officer Wolff's affidavit. This is insufficient to support defendant's claim." A review of the record supports the trial court's factual findings and legal conclusions.

**{¶105}** Accordingly, I would overrule Curry's first assignment of error.

### Sentencing

**{¶106}** In his second assignment of error, Curry argues that the trial court committed plain error in sentencing Curry to concurrent sentences for counts that should have merged and ordering the forfeiture of the firearms. The State concedes the error and agrees the matter should be remanded to allow the State to elect which counts to proceed upon for sentencing.

### Conclusion

**{¶107}** Therefore, I would overrule the first assignment of error, sustain the second assignment of error, and remand the matter to the trial court for resentencing.